1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   SHANNON DION SHINE,                    )   Case No.: 1:14-cv-00021-JLT
                                             )
12              Petitioner,                  )   ORDER DENYING PETITION FOR WRIT OF
                                             )   HABEAS CORPUS (Doc. 1)
13        v.                                 )
                                             )   ORDER DIRECTING CLERK OF COURT TO
14   J. SOTO, Warden,                        )   ENTER JUDGMENT AND CLOSE FILE
                                             )
15              Respondent.                  )   ORDER DECLINING TO ISSUE CERTIFICATE
                                             )   OF APPEALABILITY
16   _____

17        In 2011, a jury convicted Petitioner of two counts of corporal injury to a cohabitant with a prior

18   conviction and one count of assault with force likely to produce great bodily injury.  The court

19   enhanced Petitioner's sentence due to his prior "strike" convictions and prior prison term.  Here,

20   Petitioner raises errors he claims occurred at his trial including the court admitting evidence of an

21   earlier act of domestic violence and refusing to dismiss a prior "strike," and his attorney's failure to

22   properly advise him regarding a plea agreement and his failure to properly investigate the case and to

23   call certain witnesses to testify at trial.  Because the Court's finds Petitioner has failed to demonstrate

24   his entitlement to relief, the Court **DENIES** his petition for writ of habeas corpus.

25   **II.    Procedural History**

26        After suffering the convictions noted above, the Kings County Superior Court sentenced

27   Petitioner to an indeterminate sentence of fifty-one years-to-life. (Doc. 1, pp. 97-114).  He appealed to

28   the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed.  (Id.).  The

California Supreme Court denied his petition for review.  (Lodged Document ("LD") 26).  Petitioner then filed numerous state habeas petitions, all of which were denied.

Respondent concedes that grounds one and two were fully exhausted in state court; however, Respondent argues that grounds three and four are unexhausted.  (Doc. 8, p. 10).

**III.    Factual Background**

The Court adopts the Statement of Facts in the 5[1] DCA's unpublished decision[1]:

In the summer of 2008, P.A. was involved in a romantic relationship with defendant. Defendant and P.A. lived together in her apartment in Lemoore, and defendant had his own key to her apartment.  Defendant and P.A. occasionally argued.  On one occasion, defendant scared P.A. and she ran out of the room.  However, there had never been any physical violence in their relationship.

**Incident of August 17, 2008 (count IV)**

In the early morning hours of August 17, 2008, P.A. locked herself out of her apartment. P.A. walked to a nearby store and called defendant, who was at a friend's house in Merced. She asked defendant to return to Lemoore to use his own key so she could get back into her apartment. Defendant agreed and had someone give him a ride back to Lemoore.

P.A. testified that defendant returned to the apartment about three hours later. When defendant arrived, he started "talking smack" because he was angry about having to return to Lemoore. P.A. testified that defendant used his cell phone to record himself as he repeatedly said that he was going to "woop" her.  Defendant and P.A. verbally argued as they walked upstairs to the apartment.  Defendant unlocked the apartment with his key, closed the door, and locked P.A. out for a few minutes.  Defendant emerged from the apartment and said he was going to leave in P.A.'s van.  P.A. objected and they argued about whether he could use her van.  Defendant told P.A. that she better stop arguing.

P.A. testified that defendant went downstairs and headed for her van.  P.A. followed him and repeatedly told him not to take her van.  P.A. testified that defendant pushed her to the ground and into mud. When P.A. tried to get up, defendant "stomped" her down into the mud more than once.  Defendant grabbed P.A.'s hair and tried to drag her.  P.A. said he was going to pull her hair out.  Defendant replied, "Good."  Defendant eventually left in P.A.'s van.

After defendant left, P.A. went to the nearby apartment of Dorris Johnson, who was also the property manager. P.A. told Johnson what happened. P.A. was frightened and asked Johnson not to let defendant or anyone else in the apartment. P.A. was muddy, and she had scratches on her arm and a bruise on her side.  Johnson encouraged P.A. to go to the hospital.  P.A. refused and stayed with Johnson almost the entire day.

Later that evening, P.A. went to the hospital for treatment of her injuries. She told medical personnel that she suffered the bruise while doing "hip hop aerobics" at home.  P.A. testified she lied because she was scared and terrified of defendant.

///

---

[1] The 5[1] DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5[1] DCA.

2

**Text messages**

P.A. testified she had previously programmed defendant's cell phone number into her cell phone.  She identified the contact as "Deon," misspelling defendant's middle name of "Dion." P.A. testified that she received a series of threatening text messages from "Deon," beginning on August 17, 2008, and continuing into September 2008.  She also received a threatening text message that was directed to Dorris Johnson.

On September 9, 2008, P.A. received a text message from "Deon," in which he threatened to "[t]orch" her apartment.  P.A. believed defendant was capable of doing it.  Another message stated: "'I not known for playin [sic].'"  Yet another message stated: "'I figure eventually you would get tired of getting your ass wooped and straight up,'" and "'I'm a knock you out.'"

**Incident of September 11, 2008 (counts II & III)**

P.A. testified about an assaultive incident which occurred on September 11, 2008. Defendant called P.A. at her apartment and asked to use her van. P.A. refused.  Defendant asked if he should pick up his things from the apartment. P.A. replied, "'If that's what you want.'"  Defendant said he was on his way.

P.A. testified she was in bed when defendant arrived at her apartment. Defendant was angry, and they argued as he gathered his belongings. Defendant suddenly rushed to the bed and started to hit P.A.  Defendant hit P.A. in the face with a closed fist more than once.  As defendant hit her, P.A. repeatedly asked defendant, "'What did I do? What did I do?'"

P.A.'s 14–year–old daughter was in the apartment, and she heard P.A. crying. The girl looked toward the bedroom and saw the bed moving.  She went to the doorway but someone closed the bedroom door.  She knocked and asked what was wrong.  P.A. was still in bed, and she asked defendant if she could tell her daughter that she was okay.  Defendant replied, "'You're not okay.'"  P.A.'s daughter testified that she heard part of this exchange.

P.A. asked defendant to get some ice for her. Defendant replied, "'You don't need any ice.'"  Defendant left the apartment and drove away in P.A.'s van.

P.A. testified she suffered bruises on her face.  She went to the emergency room, and again told hospital personnel that she suffered the injuries doing "hip hop aerobics" at home. P.A. testified that she lied because she was still afraid of defendant.

Dorris Johnson saw P.A. after she returned from the hospital. P.A. had bruises and an injury on her forehead, black eyes, and appeared to be in shock.

**P.A.'s report to the police**

On September 12, 2008, P.A. went to the Hanford Police Department to report the assaults. P.A. testified she went to Hanford instead of Lemoore because she was afraid defendant would see her or find out that she was talking to the police.  P.A. spoke to Officer Alvaro Santos from the Lemoore Police Department. They went back to Lemoore for the interview.

Santos testified P.A. was shaking, crying, and very upset.  As Santos interviewed P.A., she received a text message from "Deon" which stated: "'You ready for round two?'"

**Prior domestic violence incident**

K.L. testified that she dated defendant in 2004 during which time defendant physically assaulted her. He hit her more than once and he hit her in the face with his hands. He threatened her, and

3

he told her, "'You think this is over but it's not.'"  K.L. testified she sought medical attention as a result of the attack.

**Expert testimony**

Pamela Tejada testified she was the victim/witness advocate coordinator for Lemoore Naval Air Station, and she had previously testified in other cases as an expert in domestic violence. Tejada testified that in her experience, it was common for victims to lie about domestic violence to health care providers because they typically do not want to send a loved one to jail.

**DEFENSE EVIDENCE**

Amanda Murphy testified she met defendant for the first time on September 11, 2008. Defendant was driving a friend's van and picked her up at a park. They spent the entire afternoon and evening together, and spent time with defendant's friends, Eric Bruce, Sandra Briceno, and Rodolfo Valdez.

Murphy testified that they were stopped by Lemoore police officers that evening because the van's registration tags were expired. Defendant dropped off Murphy at her mother's house around 3:00 a.m. the next morning. Murphy testified she had only met defendant twice, but she thought he was a really good person.

Bruce, Briceno, and Valdez testified that they spent the evening with defendant and Murphy, although their accounts were somewhat inconsistent with Murphy's testimony about their activities that night.

**Defendant's trial testimony**

Defendant admitted he had five prior felony convictions, which were for domestic violence, false imprisonment, criminal threat, and two counts of assault with force likely to produce great bodily injury.  He went to prison in 2004.  Defendant admitted he hit K.L. in the face more than once, but claimed he did so because she cut him with a knife.  Defendant complained that he was the only person who went to jail even though K.L. was also fighting.

Defendant testified he had been in a dating relationship with P.A., but he only stayed at her apartment a couple of times, and he did not have a key.  Defendant and P.A.'s former husband were good friends, and he was upset when defendant started to date P.A.  P.A. allowed defendant to use her van.  Defendant ended their relationship in mid-August 2008, and she was unhappy about it.  Defendant testified that P.A. was an alcoholic.  She regularly threatened to do something to cause a violation of his parole.

Defendant testified that he did not assault P.A.  On August 17, 2008, he was with his grandparents in Hanford; he was not in Merced.  P.A. called him for help, but he did not have a key to unlock her apartment.  Defendant testified he never went to her apartment, and they did not have an altercation that day.

Defendant testified that on September 11, 2008, he briefly saw P.A. in the mid-afternoon.  He borrowed her van with permission.  He spent the rest of the day with Murphy and his friends. He was pulled over by the police for driving with expired tags.  The police searched the car, and he was not arrested.  He took Murphy home around 3:00 a.m., returned the van to P.A., and left with a friend.  Defendant was impeached with inconsistencies between his testimony and the accounts of Murphy and Bruce about their activities.

Defendant testified he lost his cell phone on September 7, 2008, while he was at a car show. The next day, he bought a cell phone with a different number.  He denied sending any of the

threatening text messages to P.A., including those received by P.A. before he lost his cell phone.

Defendant claimed P.A. lied about everything because she had mental issues, and P.A. likely coerced her daughter so she would also make accusations against him.

**Rebuttal evidence**

Officer Santos testified that he obtained P.A.'s cell phone on September 12, 2008. It contained a contact for "Deon" with a particular phone number. The next day, he called that number and asked for Dion. A man answered and said "yeah." Santos asked if he was speaking with "Shannon Dion," and the man hung up. Santos called again and reached voice mail. He left a message identifying himself as a police officer and asked for a return call. No one ever called back.

(Doc. 1, pp. ).

## IV.   **Discussion**

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

5

by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we

independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

## V.    Review of Petitioner's Claims

The petition alleges the following grounds for relief: (1) the trial court violated Petitioner's Due Process rights by admitting evidence of a prior act of domestic violence; (2) the trial court abused its discretion in failing to dismiss one of Petitioner's prior "strikes"; (3) ineffective assistance of trial counsel in advising Petitioner to reject the plea offer and go to trial; and (4) ineffective assistance of counsel in failing to adequately investigate the case and compel the attendance of certain defense witnesses.

### A.    Admission of Prior Incident of Domestic Violence

Petitioner contends that the trial court violated his right to due process when it permitted a witness, K.L., to testify regarding prior uncharged acts of domestic violence committed by Petitioner against her.  This contention is without merit.

#### 1.    The 5th DCA's Opinion.

Defendant contends the trial court violated his due process rights when it permitted K.L. to testify that he committed prior acts of domestic violence against her, and then instructed the jury that it could consider her testimony as disposition evidence.

**A. Background**

During pretrial motions, defense counsel objected to the prosecution's intent to call K.L. to testify about defendant's prior acts of domestic violence. Counsel argued such disposition evidence was irrelevant and highly prejudicial. The prosecutor replied that Evidence Code section 1109 specifically provided for the admission of disposition evidence in domestic violence cases. The court deferred ruling on the matter until later in the trial.

During the course of trial, the court addressed the admissibility of K.L.'s testimony. Defense counsel argued the details of the prior incident were prejudicial and read a lengthy account from the probation report about defendant's assault on K.L., as an offer of proof of her proposed testimony for the prosecution.

According to the report, defendant told K.L. he would beat her until she was dead, and he would leave her in the mountains where no one would find her. Defendant repeatedly hit her with a belt. He decided that she wasn't being hurt enough, and removed her clothing and directly hit her body with the belt several times. He repeatedly slapped both sides of her face and said he was going to make sure her left side matched her right side. He found some Q–Tips, pushed one in her ear, and said he was going to shove it in.

Also according to the probation report, K.L. stated that defendant stopped pushing the Q–Tip when he saw blood coming out of her ear. Defendant obtained a bottle of stain cleaner, and sprayed it over K.L.'s body and hair to get rid of the blood stains. He cut the bloody pieces of her hair with scissors, and threatened to shave her head. He started to shave her head, and then told her to get into the shower and wash off the blood. Defendant poured bleach in the shower and told K.L. to stand in it. K.L. got out of the shower, dressed, and tried to get out of the apartment. Defendant grabbed the back of her head and slammed her into a wall. K.L. said defendant beat her worse than before. He found some fireworks in the apartment, and said he was going to place them in her and light them when she was asleep. Defendant then grabbed a pair of pliers and threatened to pull out K.L.'s teeth. K.L. begged him to stop and he did. He went to bed and said, " 'You think this is over but it's not,' " and said it could last for days. After he fell asleep, K.L. escaped from the apartment and asked a neighbor for help.

After defense counsel read the probation report's account, the prosecutor clarified that he was not going to introduce the entirety of the evidence about defendant's assault on K.L. Instead, he only intended to ask K.L. general questions about her relationship with defendant, which only required yes or no answers as to whether he committed any acts of violence against her, hit her, and threatened her. Defense counsel replied that such evidence would not be unduly inflammatory, and he would allow the prosecutor to lead K.L.'s testimony to ensure that she would not discuss the more prejudicial acts. The prosecutor agreed that he would not ask any questions about the Q–Tips, the fireworks, the belt, and pouring bleach on the victim.

The court asked defense counsel if he was still raising an objection pursuant to Evidence Code section 352. Defense counsel withdrew his objections based on the prosecutor's stated intent to limit the evidence.

As set forth ante, K.L. simply testified that she dated defendant in 2004; that defendant physically assaulted her; that he hit her more than once; that he hit her in the face with his hands; that he threatened her; and that he told her, "'You think this is over but it's not.'" K.L. sought medical attention because of the attack. The prosecutor asked leading questions, defense counsel did not object, and defense counsel did not cross-examine K.L.

Also as set forth ante, defendant testified at trial and admitted he hit K.L. However, he insisted that the incident occurred because K.L. cut him with a knife, and he hit her in the face as a reaction.

After defendant testified, the prosecutor argued defendant's self-defense claim had opened the door to introduce the rest of the details about his assault on K.L. Defense counsel vigorously objected and again argued the details were unduly prejudicial.

After the parties argued the matter, the prosecutor decided to withdraw his request to introduce the details about defendant's assault on K.L., "[i]n order to expedite the matter." The prosecutor

was satisfied with the extent of K.L.'s previous testimony. K.L. was not recalled and no further evidence about defendant's assault on K.L. was introduced.

During the instructional phase, the court gave the jury CALCRIM No. 852 as to the consideration of K.L.'s testimony: "The People presented evidence that the defendant committed domestic violence that was not charged in this case specifically the 2004 incident involving [K.L.]." The court defined the terms domestic violence, abuse, and cohabitants, and further instructed:

> "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

> "If the People have not met this burden of proof, you must disregard this evidence entirely.

> "If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from the evidence that the defendant was disposed or inclined to commit domestic violence and, based on the decision, also conclude that the defendant likely to commit and did commit Counts 1–4, as charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Counts 1–4 as charged here. The People must still prove each charge and allegation beyond a reasonable doubt."

## B. Analysis

Defendant contends the court committed federal constitutional error by admitting K.L.'s testimony because it constituted unlawful character evidence, and CALCRIM No. 852 erroneously instructed the jury that it "may" conclude that he was disposed to commit domestic violence. Defendant further argues defense counsel was prejudicially ineffective for failing to raise these objections. Defendant concedes numerous courts have rejected similar challenges to Evidence Code section 1109, but he raises the issue to preserve it for possible federal habeas review.

Evidence Code section 1109, subdivision (a)(1) provides in relevant part that, in certain exceptions not applicable to this case: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

"Domestic violence is but one of the areas in which the rules of evidence have been relaxed in recent years. [Evidence Code] Section 1109, subdivisions (a)(2) and (a)(3) allow admission of prior incidents of elder abuse and child abuse when the defendant is currently charged with a like offense, and [Evidence Code] section 1108 provides a similar evidentiary exception for past commission of sexual offenses when the defendant is being tried for a sexual offense. [¶] These statutes are remarkable not because they allow testimony about prior misconduct, but because they allow the jury to draw propensity inferences from the prior acts. [Citation.]" (People v. Johnson (2010) 185 Cal.App.4th 520, 528–529.)

"[Evidence Code] Section 1108 is modeled on rules 413 through 415 of the Federal Rules of Evidence, which were enacted in 1994. [Citations.] Rule 413, subdivision (a) provides that in a criminal case in which the defendant is accused of an offense of sexual assault, 'evidence of the

defendant's commission of another offense or offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant.' Rule 414 applies the same rule of admissibility to criminal child molestation cases. Rule 415 allows plaintiffs to proffer such evidence in civil cases involving sexual assault or child molestation." (People v. Soto (1998) 64 Cal.App.4th 966, 980.)

As noted by the People, and conceded to by defendant, the admissibility of propensity evidence pursuant to Evidence Code sections 1108 and 1109 has repeatedly been found constitutional and not in violation of due process. (See e.g., People v. Falsetta (1999) 21 Cal.4th 903, 912–922; People v. Johnson, supra, 185 Cal.App.4th at pp. 528–529; People v. Williams (2008) 159 Cal.App.4th 141, 147; People v. Cabrera (2007) 152 Cal.App.4th 695, 704; People v. Flores (2009) 176 Cal.App.4th 1171, 1180–1181; see also Schroeder v. Tilton (9th Cir.2007) 493 F.3d 1083, 1088 [admission of propensity evidence pursuant to Evidence Code section 1108 did not violate prohibition against ex post facto laws].)

Defendant's constitutional challenge to Evidence Code section 1109 is based on McKinney v. Rees (1993) 993 F.2d 1378 (McKinney). As explained in People v. Holford (2012) 203 Cal.App.4th 155 (Holford), however, defendant's reliance on McKinney is misplaced because McKinney was decided "before enactment of the federal rules allowing evidence of uncharged sexual assaults and child molestation and the enactment of section 1108...." (Holford, supra, 203 Cal.App.4th at p. 183, fn. 19.) "The application of McKinney's holding in the context of [Evidence Code] section 1108 evidence has been repeatedly rejected. [Citations.] The Ninth Circuit and other federal courts have long since upheld the constitutionality of the federal rules allowing sexual misconduct evidence to establish propensity to commit such crimes. [Citations.]" (Ibid.)

Similarly, defendant's challenges to CALCRIM No. 852 and its predecessor instructions have also been rejected. (See People v. Johnson (2008) 164 Cal.App.4th 731, 738–740.)

While defendant has not challenged K.L.'s actual trial testimony, we note that testimony was admissible as propensity evidence in this domestic violence case pursuant to Evidence Code section 1109, and it was not prejudicial pursuant to Evidence Code section 352. Given the prosecutor's agreement to limit K.L.'s testimony, and the withdrawal of his subsequent motion to reopen, the jury heard extremely limited propensity evidence that defendant had previously hit and threatened K.L. Such limited testimony was no more prejudicial or inflammatory than the charged offenses and P.A.'s testimony about defendant's two assaults upon her. (See, e.g., People v. Jones (2012) 54 Cal.4th 1, 50–51.)

We thus reject defendant's constitutional challenges and similarly find that defense counsel was not prejudicially ineffective for failing to raise these issues during trial.

(Doc. 1, pp. ).

2. Federal Standard.

The United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process.  See  Estelle v. McGuire, 502 U.S. at 75, n. 5; see Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir.2002) (habeas relief not warranted unless due process violation clearly established by the Supreme Court); Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), reversed on other grounds, Woodford v. Garceau, 538 U.S. 202 (2003)(the Supreme

1   Court "has never expressly held that it violates due process to admit other crimes evidence for the

2   purpose of showing conduct in conformity therewith...."). In this regard, in <u>Holley v. Yarborough</u>,

3   568 F.3d 1091 (9th Cir. 2009), the Ninth Circuit explained as follows:

4           The Supreme Court has made very few rulings regarding the admission of evidence as a
            violation of due process. Although the Court has been clear that a writ [of habeas corpus]
5           should be issued when constitutional errors have rendered the trial fundamentally unfair
            [Citations], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial
6           evidence constitutes a due process violation sufficient to warrant issuance of the writ.

7   <u>Holley</u>, 568 F.3d at 1101.

8                   3.  <u>Analysis</u>.

9           Here, as Respondent correctly argues, there is no clearly established federal law by the Supreme

10   Court on this subject; hence, there can be no legitimate habeas corpus claim. <u>See, e.g., Mejia v. Garcia</u>,

11   534 F.3d 1036 (9th Cir. 2008); 28 U.S.C. §  2254(d)(1).

12           Next, to the extent that Petitioner contends that the state court violated California Evidence

13   Code § 1101 in admitting the challenged evidence, Petitioner's claim sounds in state law and is

14   therefore not cognizable in federal habeas proceedings. As discussed previously, federal habeas corpus

15   court has no authority to review a state's application of its own laws, but rather must determine whether

16   a prisoner's constitutional or other federal rights have been violated. <u>Estelle v. McGuire</u>, 502 U.S. at

17   67-68; <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990). Generally, the admissibility of evidence is a

18   matter of state law, and is not reviewable in a federal habeas corpus proceeding. <u>Estelle</u>, 502 U.S. at

19   67; <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir.), <em>cert. denied,</em> 478 U.S. 1021 (1985).

20           Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the

21   admission was fundamentally unfair and resulted in a denial of due process. <u>Estelle</u>, 502 U.S. at 72;

22   <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Walters v. Maas</u>, 45 F.3d 1355, 1357 (9th Cir. 1995); <u>Jeffries

23   v. Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993), <em>cert. denied</em>, 510 U.S. 1191 (1994); <u>Gordon v. Duran</u>,

24   895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is

25   neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

26   <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible

27   inferences that the jury may draw from the evidence can its admission rise to the level of a due process

28   violation. <u>Id</u>. at 920.

Under California law, prior uncharged criminal acts are admissible to show a common plan or scheme when "the common features …indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual…." (People v. Ewoldt, 7 Cal. 4th 380, 403 (1994).  Further, evidence of prior misconduct "committed with persons other than the prosecuting witness…is admissible to show a common design or plan where the prior offenses (1) are not too remote in time, (2) are similar to the offense charged, and (3) are committed upon persons similar to the prosecuting witness." Id. at 397.  Hence, as mentioned, the plan revealed need not be distinctive or unusual, it "only need support the inference that appellant employed that plan in committing the charged offense." People v. Kraft, 23 Cal.4th 978, 1031 (2000).[2]

The Ninth Circuit has upheld the admission of prior crimes or bad acts where (1) there is sufficient proof that defendant committed the prior act; (2) the prior act is not too remote in time, (3) the prior act is similar (if admitted to show intent); (4) the prior act is used to prove a material element; and (5) the probative value is not substantially outweighed by prejudice.  See Walters v. Maas, 45 F.3d at 1357-58 (upholding state admission of prior on federal habeas review); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992), cert. denied, 114 S.Ct. 113 (1993).  All of the above are present in this case.

Here, applying only California law, Petitioner has failed to show that no permissible inferences existed that the jury might draw from the challenged testimony of K.L.; accordingly, it does not rise to the level of a federal claim and is, therefore, simply an issue of state law.[3]   At the very least, the challenged evidence was probative of Petitioner's propensity to violence with domestic partners and to showing a common plan or scheme regarding how that violence was manifested with different women

---

[2] In federal court, evidence of prior bad acts is similarly admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). To prove that the evidence is offered for one of these reasons, it is the government's responsibility to show that the evidence (1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time. United States v. Ramirez-Robles, 386 F.3d 1234, 1242 (9th Cir.2004) (citing United States v. Beckman, 298 F.3d 788, 794 (9th Cir.2002)). The government must also show that the evidence satisfies Federal Rule of Evidence 403 in that its probative value is not outweighed by its prejudicial effect. Id.

[3] Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief.  Langford v. Day, 110 F.3d 1386, 1388-89 (1996).  Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion.").

over different time periods.  The Court need not speculate further about additional permissible bases for admission of this propensity evidence as intent alone is a sufficient basis.  Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

As the 5th DCA noted in its opinion, the incident involving K. L. was admissible under California law to show Petitioner's propensity toward domestic violence.  Moreover, as the Court of Appeal also noted, given the prosecutor's agreement to limit K.L.'s testimony, and the withdrawal of his subsequent motion to reopen, the jury heard extremely limited propensity evidence that defendant had previously hit and threatened K.L., further mitigating its prejudicial effects.  Because such limited testimony was no more prejudicial or inflammatory than the charged offenses themselves and P.A.'s testimony about defendant's two assaults upon her, the 5th DCA ruled that the evidence was not unduly prejudicial under Evidence Code section 352, which requires the trial judge to balance the probative value of proffered evidence with its potential prejudicial effect.  Such a balancing requirement safeguards due process vis-à-vis the admission of uncharged offenses under Cal. Evid. Code § 1008.  E.g., Mejia v. Garcia, 534 F.3d 1036, 1047, n. 5 (9th Cir. 2008); United States v. LeMay, 260 F.3d 1018, 1026-1027 (9th Cir. 2001).  The record shows that the trial judge conducted just such a balancing analysis pursuant to § 352 before admitting the challenged evidence, and, on direct review, the appellate court agreed.

Additionally, in order to ensure that the jury correctly utilized K.L.'s testimony, the court instructed the jurors using California's instruction on prior bad acts, that explained to the jurors, in pertinent part, as follows:

> You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence…
>
> …
>
> If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit Counts 1-4, charged here.  If you conclude that the defendant committed the uncharged domestic violence, the conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of Counts 1-4 as charged here.  The People must still prove each charge and allegation beyond a reasonable doubt.

(LD 1, p. 197).

13

Further, any error in admitting this testimony did not have "a substantial and injurious effect or influence in determining the jury's verdict," and thus was harmless.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001).  As described above, the evidence against Petitioner was substantial, and any threat of improper prejudice flowing from the challenged testimony was mitigated by the trial court's limiting instruction directing the jury to consider the uncharged acts testimony only as it was relevant to show propensity to domestic violence. The jury is presumed to have followed this instruction. Old Chief v. United States, 519 U.S. 172, 196-97 (1997); United States v. Reed, 147 F.3d 1178, 1180 (9th Cir.1998).  From all of the foregoing, it cannot be said that the state court's rejection of Petitioner's claim was objectively unreasonable. Accordingly, the claim will be **DENIED**.

B.      Abuse Of Discretion In failing To Dismiss Prior Strike

Petitioner next argues that the trial court "abused its discretion" in refusing to dismiss on of Petitioner's prior "strike" convictions for sentencing purposes.  This contention, too, is without merit.

1.  The 5th DCA's Opinion.

Defendant contends the court abused its discretion when it declined to dismiss his three prior strike convictions and instead imposed an aggregate third strike term of 50 years to life.

**A.  The prior strike convictions**

As to all counts, the information alleged that defendant had three prior strike convictions, all of which were from the K.L. case in October 2004: two convictions for assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)) and one conviction for criminal threats (§ 422). He also served a prior prison term, again based on the same case.

During the course of trial, defendant admitted the prior conviction allegations.

After he was convicted, defendant filed a request for the court to dismiss the 2004 prior strike convictions pursuant to section 1385 and People v. Superior Court (Romero) (1996) 13 Cal.4th 497 (Romero). Defendant argued his record did not show a lengthy record of criminal activity, he engaged in a brief period of criminal activity involving the assault on K.L., and his current offenses did not involve the infliction of permanent injury.

**B.  The probation report**

According to the probation report, defendant had a prior conviction in December 1994 for two misdemeanors: possession of less than one ounce of marijuana (Health & Saf.Code, § 11357, subd. (b)) and failing to appear (§ 853.7). He was placed on probation.

In August 1995, he was convicted of misdemeanor battery (§ 242) and granted diversion. In 1996, he failed diversion and the charges were reinstated. He was arrested on a bench warrant

14

and placed on probation for three years in 1997. In 1998 and 1999, he violated probation and probation was reinstated.

In January 1997, he was convicted of misdemeanor giving a false identification to a peace officer (§ 148.9, subd. (b)) and sentenced to jail.

In April 1995, he was convicted of misdemeanor fighting in a public place (§ 415, subd. (1)) and placed on probation for two years.

In November 2004, defendant was convicted of five felony offenses arising from the assault on K.L., three of which were alleged as strikes in this case: two counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)); criminal threats (§ 422); corporal injury on a cohabitant (§ 273.5, subd. (a)); and false imprisonment (§ 236). He was sentenced to five years four months in prison. In April 2007, he was released on parole, and he was still on parole when he committed the offenses in this case.

According to the probation report, defendant was 35 years old. He had obtained a certificate of completion from the San Francisco Culinary School. He was last employed by a construction company in Tulare in 2008. Defendant said that he drank beer, but he did not use drugs.

The probation report recommended two consecutive third strike terms of 25 years to life for both counts II and I.

## C.  The sentencing hearing

At the sentencing hearing, the court reviewed the probation report and acknowledged defendant's Romero request and his argument that he had engaged in a relatively brief period of criminal activity. The prosecutor replied that defendant's prior history and the facts of this case "pretty much speaks for itself" and there was no basis to dismiss the prior strike convictions. As to defendant's prior assault on K.L., the prosecutor clarified that defendant was convicted of two counts of assault with a deadly weapon for, respectively, using fireworks and pliers.

The court rejected defendant's request to dismiss the prior strike convictions, and found he came within "the spirit and letter of the Three Strikes Statute." The court noted defendant's prior strikes were based on the assault on K.L. The court reviewed the report about that assault, and found that it was "fair to say she was brutalized in the circumstances of her ordeal when she was at the hand of [defendant]." The court noted that defendant was not convicted based on a single assault on K.L., but a series of assaults and attacks committed during a long ordeal. The court found his prior abuse of K.L. was violent and life-threatening.

The court also found the current offenses involved the same type of crimes committed against a cohabitant. "The repetition of criminal activity suggests that he did not learn from his prior experience with the criminal justice system." The court concluded that defendant's Romero request should be denied because "the current offense is of the same type of crime that the defendant committed in the past." The court imposed consecutive third strike terms of 25 years to life for both counts II and IV, a concurrent third strike term for count III, and one year for the prior prison term enhancement.

## D.  Analysis

A trial court's refusal to dismiss a prior strike conviction under section 1385 is subject to review under the deferential abuse of discretion standard. (People v. Carmony (2004) 33 Cal.4th 367, 374, 375 (Carmony).) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the

trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (Id. at pp. 376–377.)

"Consistent with the language of and the legislative intent behind the three strikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to ... section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (Carmony, supra, 33 Cal.4th at p. 377.)

"Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.

"In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law,] as a matter of law,] produce [ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in Williams, supra, 17 Cal.4th 148 ... manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (Carmony, supra, 33 Cal.4th at p. 378.)

As in Carmony, this case "is far from extraordinary." (Carmony, supra, 33 Cal.4th at p. 378.) The trial court herein balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law. (Ibid.) Based on defendant's criminal record, the brutality of his assaults upon K.L. and P.A., and his failed performance on parole, the court reasonably concluded it should not grant the Romero motion. Once a career criminal commits the requisite number of strikes, the circumstance must be "extraordinary" before he can be deemed to fall outside the spirit of the Three Strikes law. (Id. at pp. 377–378.) Defendant has failed to show

the court abused its discretion in denying the <u>Romero</u> motion. (<u>Id</u>. at p. 377; <u>People v. Superior Court (Alvarez)</u> (1997) 14 Cal.4th 968, 977–978.)

Defendant contends the court abused its discretion because it solely focused on his prior strike convictions and the current offenses, while ignoring other possible mitigating circumstances. A similar argument was rejected in <u>People v. Myers</u> (1999) 69 Cal.App.4th 305, 310, which noted that the trial court in that case had read and considered defendant's motion, which raised certain mitigating circumstances, but still decided to deny his request to dismiss the prior strikes:

> "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary. [Citation.] Thus, the fact that the court focused its explanatory comments on the violence and potential violence of appellant's crimes does not mean that it considered only that factor. Accordingly, appellant has not demonstrated that the trial court abused its discretion in denying his motion to strike prior convictions." (<u>Id</u>. at p. 310.)

In this case, as in <u>Myers</u>, the court stated that it had reviewed defendant's request to dismiss the prior strikes, made extensive findings, and denied that request.

Defendant also complains that a life sentence was not appropriate in this case because his current offenses and prior strike convictions were for domestic violence. As noted by the People, defendant "is not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.]" (<u>People v. Kinsey</u> (1995) 40 Cal.App.4th 1621, 1630.) Moreover, felony offenses arising from domestic violence constitute strikes if those felonies are serious or violent, and may trigger a third strike term under the circumstances. (<u>See, e.g., People v. Laino</u> (2004) 32 Cal.4th 878, 895–898.)

Defendant further argues the court failed to consider that he was only 35 years old at the time of sentencing, with a potential life expectancy of only 60 to 63 years, and that his third strike term is the functional equivalent of life without parole. Again, as noted by the People, a similar argument was rejected in <u>People v. Strong</u> (2001) 87 Cal.App.4th 328, 345, where the court held that "middle age, considered alone, does not remove a defendant from the spirit of the Three Strikes law. Otherwise, those criminals with the longest criminal records over the longest period of time would have a built-in argument that the very factor that takes them within the spirit of the Three Strikes law — a lengthy criminal career — has the inevitable consequence — middle age — that takes them outside the law's spirit." Strong further held that "reliance on a statistical assumption would appear to clash with the obligation in <u>Williams</u> to review the defendant's individual circumstances for purposes of determining whether he is one of the exceptions who should be deemed outside the spirit of the law." (<u>Ibid</u>.)

Finally, we reject defendant's alternate argument that his defense counsel was prejudicially ineffective for not raising these specific issues to the court at the sentencing hearing. The court did not abuse its discretion when it denied his request to dismiss his prior strike convictions, and defense counsel's failure to raise specific arguments was not prejudicial given the entirety of the record.

(Doc. 1, pp. *).

### 2. Federal Standard.

In <u>People v. Romero</u>, the California Supreme Court held that the trial courts retain discretion to dismiss prior strikes in the interests of justice. <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 529-30.

1  The Romero holding applies retroactively to cases where the trial court "misunderstood the scope of its

2  discretion" to dismiss strikes.  Id. at 530 n. 13.  In such cases, the issue can be raised on appeal or in a

3  petition for writ of habeas corpus filed in the trial court.  Id.  If the trial court previously indicated that it

4  would not have exercised discretion to dismiss the strike, the claim should be summarily denied.  Id.

5        The California courts subsequently expanded the application of Romero and established the

6  following procedures for cases where the defendant was sentenced under the three strikes law prior to

7  Romero:  (1) if the trial court would have dismissed the strike, the defendant can raise the issue on

8  appeal and obtain remand for resentencing, or file a habeas petition in the trial court, id.; (2) if the trial

9  court would not have dismissed the strike, the claim must be summarily denied, id.; (3) if the record is

10  silent, the defendant must show good cause for resentencing in a habeas petition in the trial court,

11  People v. Fuhrman, 16 Cal.4th 930, 941-47, 67 Cal.Rptr.2d 1 (1997); or (4) if the defendant agreed to

12  the sentence pursuant to a plea bargain, he has no remedy, People v. Cepeda, 49 Cal.App.4th 1235,

13  1239-40 (1996); People v. Cunningham, 49 Cal.App.4th 1044, 1047-48 (1996).

14        The decisions of the California courts indicate that there is no unqualified right to a remand to

15  the trial court when a trial court has not exercised its discretion to dismiss a strike.  See Jeffers, 39 F.3d

16  at 416 (no unqualified right of remand to trial court for resentencing where Arizona Supreme Court had

17  not developed a uniform policy of remanding after invalidating an aggravating factor in death penalty

18  cases).  Hence, even were this Court to find that Petitioner was constitutionally entitled to a new

19  sentencing determination under state law, the procedural requirements have been met.

20            3.  Analysis.

21        As previously stated, "[I]t is not the province of a federal habeas court to reexamine state-court

22  determinations on state-law questions."  Estelle, 502 U.S. at 67-68.  "A state court's procedural or

23  evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by

24  infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of

25  the fundamentally fair trial guaranteed by due process."  Walters v. Maass, 45 F.3d 1355, 1357 (9th

26  Cir.1995); see Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20

27  (9th Cir.1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985), cert. denied, 478 U.S. 1021

28  (1986).  Petitioner's contention that the trial court "abused its discretion"—a discretion specific to and

set forth in California's case law--by refusing to dismiss all of his prior "strike" convictions, fails to present a cognizable federal habeas question.  Although Petitioner alleges in his claim that defense counsel was ineffective under the Fourteenth Amendment, apparently for failing to convince the trial court to dismiss the prior strikes (Doc. 1, p. 22), the claim itself does not allege a violation of due process or any other federal constitutional guarantee.  The scant reference to "ineffective" counsel or the brief mention of the "Fourteenth Amendment" is, without more, insufficient to articulate a cognizable habeas claim.  As mentioned previously, "drive-by" constitutional claims, i.e., broad, conclusory allegations of unconstitutionality, will not suffice.  Jones v. Gomez, 66 F.3d at 205; Greyson v. Kellam, 937 F.2d at 1412. In the absence of any federal constitutional issue, it thus appears to the Court that Petitioner's entire claim is premised on a violation of California law.  Consequently, Petitioner's claim is not cognizable on federal habeas review and must be denied.

However, even if the claim were cognizable, it is without merit.  Petitioner raised the issue originally in the trial court and again on his direct appeal before the 5th DCA.  In both instances, the state courts considered the relevant law, applied them to the facts in the record regarding Petitioner's prior felony convictions, and made their respective determinations not to strike any of the prior felony convictions.  The 5th DCA's discussion of the matter effectively underlines Romero's primary mandate, i.e., to circumscribe the discretion of the trial court to dismiss strikes except under unusual or extraordinary circumstances.  None of the state courts that reviewed this claim considered Petitioner's case to be either unusual or extraordinary.  Years later and with a cold record, this Court is not in a position to dispute that reasonable conclusion.  Nothing Petitioner has argued would support a conclusion that a Romero dismissal was required by the trial court under California law.  Under such circumstances, the Court will not second-guess the state court's decision that denial of the Romero motion was within the trial court's discretion.  In sum, Petitioner's claim received the consideration it was entitled to under state law, and no state created liberty interest was violated.  See Campbell v. Blodgett, 997 F.2d 512 , 522 (9th Cir. 1993), cert. denied 510 U.S. 1215, 114 S.Ct. 1337 (1994) (no due process violation where state court conducted mandated review and made findings to which petitioner entitled).

In light of the above, the Court finds the state court's denials do not constitute an unreasonable

1    application of clearly established federal law (28 U.S.C. § 2254(d)) and the petition must be **DENIED**.

2          B.   Ineffective Assistance of Counsel: Advising Petitioner To Go To Trial

3          Petitioner next contends that his Sixth Amendment rights were violated by trial counsel

4    Winspur's deficient performance in advising him to reject the plea offer and go to trial.  Again, this

5    contention lacks merit.

6          1.  The Superior Court Decision.

7          The Superior Court rejected Petitioner's claim as follows:

8          In this case, Petitioner admits that Ms. Winspur withdrew from Kings County Superior Court
           Case No. 09CM0070 before trial.  According to a review of the record in Case No. 09CM0070,
9          Mr. Oliver was substituted in as Petitioner's counsel on or about October 13, 2009.  Nothing
           within the record of Case No. 09CM0070 nor the petition before this tribunal, demonstrates how
10         the alleged deficiencies of Ms. Winspur negatively impacted Petitioner's interests in a trial
           which occurred over fourteen (14) months later.  Furthermore, lacking specific information
11         regarding the proffered negotiated plea and counsel's discussion with Petitioner regarding his
           rejection of the same, this court is unable to review whether counsel was prejudicially
12         ineffective in her advice to decline the offer.

13   (Doc. 1, p. 119).

14         2.  Federal Standard.

15         Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

16   Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel

17   are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th

18   Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S.

19   75(1988) (holding that where a defendant has been actually or constructively denied the assistance of

20   counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is

21   that Strickland does apply where counsel is present but ineffective).

22         To prevail, Petitioner must show two things. First, he must establish that counsel's deficient

23   performance fell below an objective standard of reasonableness under prevailing professional norms.

24   Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there

25   was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on

26   appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the

27   outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether

28   the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general <u>Strickland</u> standard for ineffective assistance. <u>Knowles v. Mirzayance</u>, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles</u>, 129 S.Ct. at 1420. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003). Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Here, the state court identified the appropriate federal standard by applying <u>Strickland</u>.[4] (Doc. 1, p. 118). Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of <u>Strickland</u>. For the reasons discussed below, the Court concludes that it was not.

         3.  <u>Analysis</u>.

            a.  <u>Exhaustion</u>

Respondent contends that when the California Supreme Court rejected this claim with a citation to <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (Cal. 1995), and <u>In re Swain</u>, 34 Cal.2d 300, 304 (Cal. 1949), such a denial did not exhaust the claim for habeas purposes. The Court agrees.

Under California law, a citation to <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995), indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim, and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations."

---

[4]The 5th DCA cited <u>Williams v. Taylor,</u> 529 U.S. at 390-391, which, in turn, refers to <u>Strickland</u>.

1    Duvall, 9 Cal.4th at 474.

2         Like Duvall, a citation to Swain stands for the proposition that a petitioner has failed to state his

3    claim with sufficient particularity.  In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth

4    Circuit found that the Swain citation indicated that the claims were unexhausted because their pleadings

5    defects, i.e., lack of particularity could be cured in a renewed petition.  Kim, 799 F.2d at 1319.

6         However, in Kim, the Ninth Circuit also stated that it was "incumbent" on the district court, in

7    determining whether the federal standard of "fair presentation" of a claim to the state courts had been

8    met, to independently examine Kim's petition to the California Supreme Court.  Id. at 1320.  "The mere

9    recitation of In re Swain does not preclude such review."  Id.  Indeed, the Ninth Circuit has held that

10   where a prisoner proceeding pro se is unable to meet the state rule that his claims be pleaded with

11   particularity, he may be excused from complying with it.  Harmon v. Ryan, 959 F.2d 1457, 1462 (9th

12   Cir. 1992)(citing Kim, 799 F.2d at 1321).  "Fair presentation" requires only that the claims be pleaded

13   with as much particularity as is practicable.  Kim, 799 F.2d at 1320.

14        Here, Petitioner did not file an amended petition with greater detail or particularity after the

15   Duvall/Swain dismissal.  Hence, the Court, pursuant to Kim, has reviewed the state supreme court

16   petition.  In so doing, it appears that Petitioner's claim is premised upon his unsupported and self-

17   serving account of the relationship with his trial counsel Winspur.  To that point, Petitioner alleges that

18   she conveyed to him a proposed plea agreement with the prosecutor for a six-year sentence, but

19   Winspur advised Petitioner not to take the deal until she had time to do additional investigation and that

20   she could likely get a "better deal" once that investigation had been completed.  (LD 47).  Thereafter,

21   according to Petitioner, Winspur made numerous requests for a continuance before finally requesting to

22   withdraw entirely from representing him.  (Id.).

23        However, as Respondent notes, the petition was not accompanied by any sworn declarations,

24   even from Petitioner, regarding the details of the discussions between Petitioner and Winspur, nor was

25   any evidence presented as to the actual existence of this plea offer by the prosecution.  Undoubtedly, it

26   was this very absence of detail that prompted the Superior Court, and later the state Supreme Court, to

27   conclude that review was not possible on such a deficient record.  Accordingly, under the Ninth

28   Circuit's mandate, the Court concludes that it was "practicable" for Petitioner to have presented to the

state supreme court additional information, in the form of legal documents related to the nature of the plea agreement and sworn declarations regarding the actual conversations between Winspur and Petitioner, that could have made appellate review by the state court's more meaningful.  Hence, as Respondent contends, the claim is unexhausted and will be denied on that ground.

b.  Merits.

However, even assuming, arguendo, that the claim was exhausted, it still fails on the merits. The Sixth Amendment right to counsel "extends to the plea-bargaining process."  Lafler v. Cooper, ___ U.S. ____, 132 S. Ct. 1376, 1384 (2012). To prevail on such a claim, a petitioner must show that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56 (1985). A petitioner must also demonstrate "'gross error on the part of counsel,'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992) (noting that "that familiarity with the structure and basic content of the Guidelines...has become a necessity for counsel who seek to give effective representation")).  Defense counsel is not "required to accurately predict what the jury or court might find." Turner, 281 F.3d at 881. See also McMann, 397 U.S. at 771 ("uncertainty is inherent in predicting court decisions."); United States v. Martini, 31 F.3d 781, 782 n.1 (9th Cir. 1994) ("Trials are difficult to predict, and advising a criminal defendant whether to accept or reject a plea offer can be a tricky proposition."). Nor is defense counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881. Although counsel must fully advise the defendant of his options, he or she is not "constitutionally defective because [they] lacked a crystal ball." Id.

Petitioner fails to meet either Strickland prong.  First, he has not shown that counsel's advice to him was deficient.  He alleges that counsel told him that, after further investigation, she could probably get him a better offer.  Petitioner's self-serving statements do not exclude the possibility that counsel was correct, and that a better offer would have been forthcoming at a later date, if counsel's

investigation had turned up any significant exculpatory evidence. Since counsel withdrew from representation well before trial, and since Petitioner has not presented any admissible evidence regarding the chronology of plea negotiations, there is nothing in this record to establish that, even if <u>Strickland</u> required defense counsel to accurately prognosticate the future, Petitioner's counsel was wrong in such a way as to violate his Sixth Amendment rights.

Additionally, Petitioner has failed to show prejudice.  The fact that counsel withdrew from the case long before trial commenced, and that a different attorney was tasked with the responsibility to negotiate a potential plea agreement but did not, opting to try the case, would appear to be fatal to Petitioner's claim of prejudice.  To establish prejudice, Petitioner would have to show that, in addition to the fact that but for counsel's advice he would have taken the original plea deal, the prosecution made no further overtures regarding a negotiated plea after the initial offer to counsel or her replacement, and that this was due directly to the fact that Petitioner had turned down the original offer on the advice of Winspur.  Petitioner proves none of these circumstances.  Hence, no prejudice has been established or could possibly be presumed from the present record.

Accordingly, the Court concludes that the state court's rejection of this claim was not objectively unreasonable.  Hence, habeas relief will be **DENIED**.

C.   <u>Ineffective Assistance of Counsel: Failure To Investigate And Call Witnesses</u>

Finally, Petitioner argues that his trial counsel was ineffective for failing to call certain witnesses.  Once again, the claim is without merit.

1.   <u>Superior Court's Decision.</u>

The Superior Court denied Petitioner's habeas claim as follows:

Petitioner claims that in connection with Kings County Superior Court Case No. 09CM0070, his appointed counsel has provided ineffective assistance.  Specifically, Petitioner claims that his appointed attorney failed to utilize all of his requested witnesses, specifically did not call Lemoore Police Officer Lombarde as a witness, and did not provide him with copies of all discovery exchanged in the case.  A review of Case No. 09CM0070 evidences a pending Motion for New Trial to be heard on May 5, 2011.

In order to prevail on his claim of ineffective assistance of counsel, Petitioner must demonstrate by a preponderance of the evidence that: "(1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner."  (<u>In re Jones</u> (1996) 13 Cal.4th 552, 561; <u>People v. Plager</u>

(1987) 196 Cal.App.3d 1537, 1542-1543; see also, Strickland v. Washington (1984) 466 U.S. 668, 691 [an error by counsel, even if professionally unreasonable, does not warrant setting aside a judgment in a criminal proceeding if the error had no effect upon the judgment].)  Here, Petitioner has not alleged nor otherwise demonstrated that the decisions made by his attorney were not a matter of trial tactics.  (See e.g., People v. Fosselman (1983) 33 Cal.3d 572, 581-582 [Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission].)  According to Petitioner, his attorney interviewed and subpoenaed each of the witnesses for trial (petition, 3:6(a)), but did not call them to testify.  The facts set forth within the petition do not demonstrate that by failing to call such witnesses, counsel acted below the standard of care and/or prejudiced Petitioner's defense.  Simply because a witness may be presented at trial, does not mean that they should be.

(LD 36, pp. 1-2)(emphasis in original).

       2. Analysis.

          a. Exhaustion.

As with the previous claim, the state Supreme Court denied this claim with citations to Duvall and Swain.  Reviewing the state petition presented to the state Supreme Court, as required by Kim, the Court notes that this claim, like the previous one, is premised entirely on Petitioner's self-serving allegations, and not upon any evidence or admissible proof, such as declarations or legal documents.  It was certainly "practicable" for Petitioner to have supported his allegations with such admissible evidence, assuming such evidence existed or could be developed through investigation.  However, Petitioner again chose not to file an amended petition after his Duvall/Swain dismissal in state court. Thus, the Court concludes that this claim is also unexhausted and should be denied on that basis.

          b. Merits.

The claim also fails on its merits.  Petitioner alleges that his trial attorney failed to interview and call to testify various witnesses, specifically, Officer Lombardo, Parole Agent Cassina, his grandparents, and the "physician that examined the victim on the night of 9/11/08…." (Doc. 1, pp. 35-36).  Nothing in the record is probative of whether counsel actually interviewed the witnesses mentioned above.  Accordingly, it is impossible to agree with Petitioner's reasoning absent some showing that counsel actually failed to do what Petitioner alleges he failed to do.  Moreover, nothing in the record establishes that anything relevant to the preparation of the defense would have been gleaned from an interview with any of the specified potential witnesses.  Thus, Petitioner has failed to show Strickland prejudice.

1    Regarding counsel's failure to call these witnesses at trial, the record is somewhat clearer, since

2    Petitioner has filed with the Court the defense's witness list, which does not include the names of the

3    above-mentioned witnesses.  However, that alone fails to show either defective performance or

4    prejudice.

5    Petitioner presumably would have had his attorney call his grandparents and parole agent to

6    testify that his primary residence was with his grandparents, not with the victim, thus potentially

7    rebutting one of the elements of the domestic violence charge.  However, the victim testified to that

8    element extensively, indicating that Petitioner was at her home every night, that they slept in bed

9    together, that Petitioner kept clothes in her closet, that he bought groceries for her and her children, and

10   that the victim took Petitioner to friends' houses.  (LD 11, pp. 646-647).  The parole agent was

11   attempting to obtain a permanent residence for Petitioner but, in the interim, his official address was

12   with his grandparents, who stated that they were housing him on a temporary basis, that he left

13   frequently, and when he was out of sight they did not know where he went.

14   The Court agrees with Respondent that it cannot dismiss the possibility that counsel did not call

15   these witnesses on strategic grounds.  It was not really in dispute that Petitioner's registered residence,

16   for purposes of parole, was with his grandparents.  However, as Respondent points out, for purposes of

17   the crime for which Petitioner was charged, "cohabitation" is defined in California as "the living

18   together under the same roof of unrelated adult persons of the opposite sex for a substantial period of

19   time, resulting in some permanency of relationship."  Cal. Pen. Code sec. 273.5(a).  The statue further

20   provides that additional factors may be considered, including sharing of income or expenses, joint use

21   or ownership of property, whether the parties hold themselves out as husband and wife, the continuity

22   of the relationship, and the length of the relationship.  Id.  "Substantial period of time" and "some

23   permanency of relationship" are broad phrases that would have given the fact-finder great leeway in

24   deciding the issue.  Certainly, the victim's testimony alone was sufficient for a reasonable juror to have

25   concluded that the element of cohabitation was met. The fact that Petitioner might have been able to

26   present evidence that, in some light, could have been construed as supported the opposite legal

27   conclusion, is simply insufficient to conclude either that counsel was deficient or that any deficiency

28   was prejudicial.  Finally, as Respondent notes, the claim goes only to the domestic violence conviction

and not the assault conviction.

Moreover, in deciding whether to rebut the victim's testimony with the mere fact that Petitioner's residence on parole was at his grandparents, defense counsel would have had to consider that both Petitioner's grandparents and the parole agent would have been extensively cross-examined by the prosecutor at trial, that evidence regarding the fact of Petitioner's parole (and thus the fact that he was a convicted felon) would have been repeatedly emphasized to the jury through that cross-examination, and that, even if the jurors believed that Petitioner's listed address for parole was his grandparents address, nothing in the California statutes precludes a finding that Petitioner was also cohabiting with the victim at the same time.

Under Strickland's first prong, Petitioner must demonstrate both that trial counsel's performance was objectively unreasonable, and also that trial counsel's actions did not constitute sound trial strategy. Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Jones v. Wood, 114 F.3d 1002, 1010-11 (9th Cir.1997).  Under the circumstances discussed above, a reasonable attorney could have made the strategic decision not to call the grandparents and parole agent as witnesses at trial.  A mere difference in opinion as to trial tactics does not constitute denial of effective assistance.  United States v. Mayo, 646 F.2d 369, 375 (9th Cir.), cert. denied sub. nom.; Dondich v. United States, 454 U.S. 1127 (1981).  Tactical decisions do not constitute ineffective assistance of counsel simply because, in retrospect, better tactics are known to have been available. Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

At for Officer Lombardo, he would have testified purportedly to support Petitioner's alibi. However, as Respondent points out, Lombardo would have testified that he saw Petitioner around 10:30 p.m., some three and one-half hours after the assault on the victim occurred.  Accordingly, Lombardo's testimony would not have provided Petitioner with an alibi.

Based on the foregoing, Petitioner has failed to establish either prong of Strickland regarding counsel's failure to investigate the above-mentioned witnesses or to call them to testify at trial.  Hence, the state court's adjudication was not contrary to or an unreasonable application of Strickland, and therefore the claim must be denied.

Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a

writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court **DECLINES** to issue a certificate of appealability.

///

1

## ORDER

2       For the foregoing reasons, the Court HEREBY ORDERS as follows:

3       1.  The petition for writ of habeas corpus (Doc. 1) is DENIED with prejudice;

4       2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

5       3.  The Court DECLINES to issue a certificate of appealability.

6

7   IT IS SO ORDERED.

8       Dated:   **February 11, 2016**              **/s/ Jennifer L. Thurston**

9                                          UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28